District Court. May it please the court. This is an appeal from a summary judgment in a hit and run personal injury accident involving a Border Patrol agent under the Federal Tort Claims Act. In reviewing the District Court's summary judgment order de novo, this court draws all reasonable inferences and resolves all credibility disputes in favor of the non moving, in this case the plaintiff appellant Tammy Barrier. The District Court's decision resolved numerous factual disputes against the non moving party through inferences against the non moving party and announced a categorical union activities on personal rule that does not find support in Texas law. The sole issue for this court on appeal is whether a rational fact finder on this record, considering all of these facts, could find that Agent Duran's supply run during the pandemic furthered the Border Patrol's interests. Or put inversely, did the government below conclusively establish that this was a purely personal errand? We think the District Court's decision was an error, that the judgment should be vacated and the case remanded for further proceedings. We'd like to make three points today, Your Honor. First of all, the District Court resolved numerous factual disputes and credibility disputes in favor of the government, which was improper. Second, the Texas Supreme Court's decisions in Painter and Cameron support that Agent Duran's mid pandemic supply run furthered Border Patrol's interest and therefore applying the objective functional test that's been adopted by the Texas Supreme Court, that conduct was within the scope of his employment. And then third, the District Court's categorical union activities on personal rule is contrary to Texas's objective functional test, is contrary to the restatements approach, which the Texas Supreme Court has adopted and the Fifth Circuit has held applies if there's not a Texas case on point and is also contrary to the decisions of every other jurisdiction that's persuasive authority that have confronted the question. Turning first to the factual disputes issue, the District Court made, I think I counted at least nine, resolved at least nine material disputes in favor of the government. First of all, the important question in these cases is objectively, was the employee's conduct motivated in part to benefit the employer? And on this point, the District Court accepted the government's narrative that at the time that Agent Duran left the Border Patrol station and exited the parking lot, striking Miss Barrier and then driving away, he was returning home, having completely forgotten about the supply run mission with which he had been tasked by his union superior, Agent Anfinsen. Agent Duran testified that he had completely forgotten about this assigned task. District Court appeared to accept that testimony. You know, it wasn't an assigned task. Reading the briefs, both sides in this case, it's a little challenging because you are literally sort of talking past each other and you're both will explore this on the other side also, but you're sort of mischaracterizing or exaggerating what's going on. I mean, there's no real dispute that he was clocked out of work at the Border Patrol. He was leaving for the day, his time sheet says so, and the time stamp on the camera, all that suggests it aligns with what he said, which is going home. His union president basically says, well, could you go pick that up? You're three blocks away from the union hall, so get that on your way home or whatever. I mean, it may be murky and there may be a material issue of fact, but it's not clear to me at all that he was on some special assigned mission, et cetera, and so forth. I mean, it's better, I think, for you to talk about the relationship between what he did for the Border Patrol, the actual agency, two hours a day, and what he did for the union, which was eight hours a day, paid for by the federal government to do it. I mean, so help me figure out, what is the scope of employment here? Does it include his union activities because he's getting paid by the agency, or are we restricted to what the agency is doing qua agency, I guess? I want to address Your Honor's question, and then I'll come back to the factual disputes because we do disagree with a lot of what Your Honor said in terms of the reasonable inferences to draw from the evidence. But specifically on the point about union activities, Agent Duran himself testified that it's murky whether his conduct is for the union or his conduct is for the Border Patrol. And I think Your Honor is alluding to perhaps some of the unusual facts of this case, which is that Agent Duran spends 80% of his workday every five days on union activities and only two hours a day on Border Patrol activities. And as Justice Souter, when he was a Supreme Court, State Supreme Court Justice, articulated in the Ames decision, which is cited in our briefs, when an employer decides to pay an employee for union activities, that's an indication that those activities further the employer's interest. And specifically, the fact that the United States compensates Agent Duran for his 80% of his time on union activities indicates that the government has decided those union activities, at least some of those activities, further the employer's interest. And ultimately, that's the test under Texas law. But that's when he's acting in a representational capacity? Yes, Your Honor, but that... I mean, there's testimony that he spent a lot of his day, those eight hours. He was responding to union members' needs. He was doing whatever, you know, whatever else he was doing that came up because of making the union function, making sure the collective bargain agreements were effectuated, etc. Yes. But it's arguable, or is it even arguable, that what he was doing in picking up these supplies that were donated was in the representational capacity, or does that matter? Your Honor, the representational capacity was an issue that was sui sponte raised by the district court and was not briefed, and there was not evidence developed in the narrow period for limited jurisdictional discovery. And so I don't know the answer to that, and it's not in the record what the collective bargaining agreement here provides. But ultimately, the statute says that the federal government cannot compensate in a union representative for their time unless it in some way benefits the government, the United States, in this case. When was he compensated for this? And in other words, was he going to claim the time it took to go pick up these supplies as part of his eight hours that day? No, Your Honor, and that's a factual dispute that we disagree with, including the clock out time, which I will come back to in a second. Okay. But he did not claim. I mean, you also, so you don't dispute he wasn't going to claim this errand on his timesheet, so to speak, whatever that may have been. I think it's important to note the way that time is documented for employees like Agent Durand. He doesn't punch in. He doesn't punch out. He certifies at the end of the two-week pay period on a web portal that he worked in on his 40 hours that week. Sometimes it's probably a little short. Sometimes it's probably a little longer. So the fact that he has testified in his subjective views that he's not compensated for this time I think is a factual dispute. Well, but he wasn't claiming it as part of his eight hours that day. Is there any dispute about that? I don't think there's a dispute that he's claiming it. And so is there any dispute about when he goes back to the Border Patrol office or facility, you said there was a huddle among the brass, or I can't remember how the briefs put it, but they all agree he doesn't have to write a memo or do anything because this was off-company time, effectively. That also suggests it's outside the scope of the employment. Is there any dispute about that, that a memo wasn't written or that they told him, yeah, you don't have to do that. Everybody agreed it was off-duty. Yes, Your Honor. I think our position is that was an after-the-fact explanation. Okay, but is there anything to dispute that? Yes. Agent Bauer testified in his deposition that he wrote a memo and delivered it to his work supervisor about this incident. And also, so that the huddle testimony- Wait, but if there was no memo written by the guy who was involved in it, does it matter that somebody else wrote a memo? I think ultimately, if it's an after-the-fact explanation, that's exactly what Judge Southwick in the Campos v. Stevenson's case, in their opinion, that was actually joined in part by Judge Graves, where there's an after-the-fact explanation that when they're shifting explanations and shifting storyline, that is not an appropriate factual issue upon which to hang a summary judgment very early in the case before there's been a significant amount of discovery conducted. Specifically on the 3.30 clock-out time, I think it's important to note here that the testimony here is actually conflicted. That 3.30 clock-out time was determined after the fact. A week later, two weeks later, on a Friday afternoon, the only person who actually testified about that was a Border Patrol official in Washington, D.C. who had no percipient knowledge. He just looked at what was entered into the time sheet. And again, the testimony here is conflicting. Agent Duran testified on the one hand that his typical day is from 2 to 4 at the Border Patrol station. His day is 2 to 4. That's when the normal shift ends at this particular station. And in fact, he was observed exiting the gate and getting into this accident right around 4 p.m. But that means the shift was over and you don't count going and coming under Texas law. Correct. But our position is that based on Agent Anfinsen's testimony when he called him after the fact, Agent Duran was on his way to accomplish the special mission, accept these supply donations, accept these provisions, and distribute them to Border Patrol stations throughout the Del Rio sector. But doesn't that make the time almost irrelevant? You seem to be accepting that he had finished for the day. And so unless this mission somehow is consistent with what you have to prove, it seems to me that whether it's 3.30 or 4 o'clock when he virtually checked out really doesn't matter. We agree, Your Honor. It's really what is he doing when he's in that truck, I think, pickup truck. Yes, Your Honor. It is one of his purposes, one of his motivations to benefit the Border Patrol, to gather those supplies, to gather those provisions, and then distribute them throughout the Del sector, the Del Rio sector. And we agree that it's immaterial, but the district court appeared to rely on the fact that he was off duty and he was off the clock in its decision. And we think there's a fact dispute on that, and that was an inappropriate basis upon which for the District Court to have a time of 3.30 or 4 o'clock is important, but what the clock says is not. It's what was he doing. That's right, Your Honor. And also, as we noted in our brief, even gratuitous activities for which an employee doesn't expect to be compensated can be within the scope of employment if it's done to further the employer's interests. Turning to our next point, the Painter case and the Cameron case established an objective and functional test, whether an employee's conduct falls within the scope of employment. And in this case, collecting in the middle of the pandemic, collecting supplies, and the testimony here is stuff like hand sanitizer, as well as provisions to be delivered, not to the union hall, not to be consumed by Agent Duran, not to be consumed by Agent Anfinson, but instead to be brought to workplaces for workers to use in the furtherance of their operations. That places this conduct within the scope of employment. And I think the Cameron case is helpful on this point because Cameron specifically distinguished the situation where items, goods, supplies, and provisions are used for personal consumption. The facts in Cameron International were groceries for an individual to consume. And they noted that there was no evidence in the record in that case that those items were going to be brought to the workplace generally or made available to workers. And in this case, these supplies and provisions were to be distributed to managers who are not part of the union, to Border Patrol agents who are not part of the union. And the donations were for the agents. And that places these items squarely within the scope of employment. And then the last point I'll make before reserving the rest of my time for rebuttal. The district court's bright line rule that union activities are personal is contrary to the functional and objective test that the Texas statement, which states that activities that are motivated in part to serve a third party, such as the union here, but also to serve the employer's interests, are within the scope. And the 14th District Court of Appeals for Houston adopted Section 236. And this court, in opinion by Judge King in Rodriguez versus Sarabin, held that because Texas has adopted the restatement, that where there's not a Texas case on point, and the parties do agree there's not a Texas case on point, the Texas Supreme Court is likely to follow the restatement, and the Fifth Circuit should as well. Those seven other jurisdictions that we identified in our brief, not a single one has adopted the bright line categorical rule that the district court adopted in this case. And specifically, I'd like to mention comment B to Section 236, which describes essentially the same exact facts in this case. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service. And then this is the language that I use. And that's exactly the facts of this case. All right, counsel. Thank you. Good morning, may it please the court. Daryl Vereen for the United States of America in this on the record in this case. I agree with you that when you look at the summary judgment record and evidence, I think you're very hard pressed to really find any disputes, much less any material disputes. And I agree with you, it is almost like two ships passing in the night when we're looking at the identical facts, which were not really in dispute, and they have different interpretations. So I think that's correct. Well, maybe so, but I'll say, you know, I would say your side's briefing sort of minimizes what he was doing as some personal errand, like he was picking up a couple of hamburgers for the guys after work. That's not what was happening. He was going to pick these things up to distribute them throughout other border patrol offices and facilities. And they were things like hand sanitizer and other things that were clearly for use way beyond what he was going to take home that day and what have you. The other thing that strikes me as a wrinkle in the case is he's paid by the government to do these union activities eight hours a day versus two hours of agency work. So how is there not a material issue of fact as to whether this was in the scope of his union duties and responsibilities? Because, Judge Wilson, there's not a material issue of fact because when we rush to talk about benefit and how the hand sanitizers and the snacks, which I would point out are personal consumption items and anybody in the courtroom can go to a grocery store. Well, yeah, but he was doing it for all the employees. I mean, this wasn't just for him. This was, this wasn't personal consumption like that. There's a case, I guess, where they went and picked up a meal or something like that for himself or something. That's different. And the problem is, is we've got to say as a matter of law, he was outside the course of his union activities. How do we do that? But the court has to say is that a matter of law, he was outside of his employer's activities. But I mean, here he's employed by the agency, but he's doing union things as part of his employment. That's right. I don't think you can escape by saying, well, it's only two hours a day that he would be within the scope of his employment. It's 10 hours a day. No, Your Honor, it's not a matter of escaping by saying on the hourly issue. What it is, is this. Agent Goodon, just like Agent Ampson, is employed first and foremost to be a Border Patrol agent. That's what they are. Their employer is Border Patrol, not the union. He's allowed, excuse me, he is allowed to perform union duties for eight hours a day as part of the collective bargaining agreement. But if it's part of those union activities, this mission, this diversion, whatever it is, if it's part of his union activities, it's within the scope of his employment. We disagree, Judge Wilson, because what you're saying there is you're conflating the union with the employer. What the court would be saying. But the employer has conflated the union with the employer by the agreement. That's the whole point. He's within the scope of his employment duties if he's doing union things. You just said that. So this has to fall outside of, I think, both for it to be outside the course of his employment. It has to do two things in the objective test in Painter. Number one is the employee. That question is answered. Is it an employee of the Border Patrol? Secondly, does it meet the objective test of whether it's in the course and scope of employment? And based on the summary judgment evidence here, when every single witness said that what he's doing had absolutely nothing to do with Border Patrol, when the acting patrol agent in charge says... So all you got to do is line up witnesses to take your position, and then the case is over? No, I don't think so, Your Honor. I don't think so. The witnesses in this case, and the court should realize... But you're saying we have to accept the witness's conclusion about whether or not he was active within the course of his employment. Tell me what case says that. There's no case that says you have to accept the conclusion. What the case law says is that if the summary judgment evidence, there's no genuine issue material fact, which is what was before the court. If it supports summary judgment, then summary judgment is appropriate. And what's unique in this case, Judge Grave, is this. Typically the tension we see in a course and scope type case is where you would have the agent or the federal employee seeking the protection of the Federal Tort Claims Act, obviously because it would avoid personal liability. This case, at least in my experience, is unique when we have everybody saying, including the alleged tort freezer agent that on, that this had absolutely nothing to do with the border patrol. So if we start with that proposition that this is what the witnesses said, this is what was before the court, and the summary judgment evidence, why then should the district court go beyond that and assume that it was a border patrol mission? Because it's the wrong question. I guess that's what I'm getting at. Here the question is not so simple as, was this within the scope of what his duties were at the border patrol? You have to account for the fact that 80 percent of his employment was the scope of union activities. And if this is within the scope of those, it strikes me he's within the scope of his employment. To do that, then the court would have to say that basically the union is his employer. No, I don't think so. The employer is paying him to do union activities. In other words, the union activities, because he's an officer, per the collective bargaining agreement, I'm saying CBA, I think whatever it is, it's within the scope of his employment, his particular employment as a border patrol agent. You're oversimplifying it by saying, well, we can only look at this 20 percent of what he does, not the 80 percent of what he does. I think what you have to look at is what the task that he was doing, whether he does 80 percent union during the day and 20 percent border patrol afterwards, what is the task that he was doing? Well, yes, that's right. And what the task he was doing, if it relates to his union activities, then it's within the scope of his employment. And if there's a fact issue as to what that was, then summary judgment's not proper. To answer your question, A, there was no fact issue because as the court pointed out in its summary judgment evidence that he was doing anything that one would typically consider union related, addressing a grievance, a wage matter, a discipline matter, counseling, these types of things that we would see. That's the representational capacity argument, right? That he was not doing things in a representational capacity, therefore, outside the scope. That one would not typically consider that a representational activity. That may be defensible. What's your support for that legally? I'm sorry, say again? What's your legal support for that as the demarcation? The legal support for the demarcation does not rest on the representational activity. What it really rests on, Judge Wilson, and I think quite frankly is the most important reason that this court should tread lightly when imposing vicarious liability for acts that in our position are not employment related is this reason. And this reason was discussed by Judge Moses on page six of her summary judgment order. It was also discussed rather extensively by the Supreme Court of Texas in the Painter versus Ameri-Hex, and this is it. In the employer-employee relationship, there's a certain amount of control that is assumed, and that is the basis for what is really an extraordinary doctrine of vicarious liability, which is risk shifting. It flies in the face of the common law rule that says we're not liable for the conduct of other people, but in the context of the employer-employee relationship, we're going to shift and allocate that risk because we assume that that level of control attaches to those items within the scope of the employment, and that's the reason. Yet, in this case, in the summary judgment evidence, even though Agent Dhanan is allowed to perform union activities eight hours a day, there's no dispute on that, the summary judgment evidence is that the United States Border Patrol, his employer can't tell him one thing about how to shift liability. That issue of the ability to control, which gives rise to duty, is not there because all the witness says we can't do it. And to say in its most basic form, the way to look at it is this, if you're going to shift the risk of an activity, in this case on the United States, well, then you ought to at least have the right to say no. Well, counsel, it's cited in the briefing, not much is made of it, but federal government, we're looking at state law, but you're trying to make this demarcation that 80% of the work that he does, which is under no control of the Border Patrol, cannot create FTCA liability. 5 U.S.C. 7131 is under the government organization and employees section of the code, labor management relations. Any activities performed by any employee relating to the union, the internal business of a union, including solicitation of membership, elections, other things, shall be performed during non-duty time. Which to me, the negative business organization, union organization activities, election of labor organization officials, election of dues, which is really beyond assisting the members, it seems to me, it is duty time. And this, I mean, you may be right, but I just don't see the basis for this division that 80% of the job that Mr. Agent Duran is doing is never going to, if anything occurs during that, the federal government cannot be made liable. And that's what I'm hearing from you. I don't know that I would go that far because I could... Well, you're getting awful close. I admit it. It is awful close. And I think that you could envision or articulate a situation where you would have that overlap. Let's give you an example. Well, let me stop before there. If you're looking for the eccentric example, you're still saying basically it's correct that almost very rarely during that 80% of the day when he's working for the union, could there be an FTCA claim? Very rarely. But you may be able to come up with some examples where there could be. Is that a fair assessment? That's a fair assessment unless it is an employer related activity. So for example, just south of... What is your best authority for that? The best authority is the painter test itself when you don't have to... And let me go back. Counsel told the court that the district court made a bright line saying that union equals personal. I disagree with that. What the district court said was union was not equal to border patrol under the specific facts of this case. And so the argument, Judge Southwick, is this. You're saying, or the appellant is saying, to try to bootstrap into what is required, which is the act has to be done with the authority of the employer. There's no summary judgment evidence that his employer directed him to do this task, authorized him to do this task, even knew he was going to do the task. So to get past that important first step, that threshold that's required for vicarious liability to attach, they bootstrap it by saying, well, Agent Amundsen told him to do this. Agent Amundsen is a union president. Agent Zahn does work for the union. So ergo, this is a border patrol task. And it's that demarcation that we disagree with because, Judge Southwick, in further answer to your question, the summary judgment evidence was that Agent Amundsen, even though he outranks him in the union, is not his supervisor. And in fact, even in the union, Agent Amundsen made it clear that Agent Zahn has no union supervisor. He's an elected position. He can do what he wants. And Agent Amundsen said that if he didn't like what I was doing, well, they could tell me to go away. I think those were his exact words. So then how do we take a task, in this case, going to let the ladies in to receive donations? And Judge Wilson, I will say this. Your point about this job and he goes out and he distributes it to all the border patrol stations. There was one passage in the record in which Agent Zahn said, we've received these donations before and we distribute them to other border patrol stations. He doesn't say that this was a task assigned by border patrol to do that. He doesn't say this is part of his specifically assigned duties. He doesn't say that he even regularly does it. None of those things were in there. And so that is, in our view, an unreasonable inference that would be made from the record. And I would further point out that even if that were the case, if this court were to say, well, it's his job to go distribute these things to border patrol stations, that's not what he was doing at the time. He wasn't distributing. He went to the union hall, which is not a border patrol station. Let me ask you this. Are you taking the position that if during the regular work day and Durand's regular work day hours, he couldn't have decided on his own to go pick up those supplies? I mean, you're suggesting that he had no authorization from, well, they're claiming authorization from somebody who is a supervisor. But my question is, are you saying he didn't have the discretion to decide on his own at any time during that work day that he was going to go pick up some supplies? He would not have had the discretion to do that. No, Judge Graves. In fact, it's exactly the opposite. What I'm saying is that during his union time, he could decide he can go to the union hall 15 times if he wants to. He can be at home working from home in his pajamas or whatever the case may be. He can do that, and border patrol can't say one single thing about it, which destroys the very underpinnings of the risk-shifting purpose of vicarious liability. And essentially, what happens is that you're turning, at least in the United States. So you're saying he could do it? He absolutely could. During his union time, he could go to the union hall. He could meet somebody. He could go meet union friends. He could meet ladies. He could do whatever he needs to do, but what they say is that the government's able to pay him during those hours because there's a determination that his activity with the union serves some benefit to the employer. Otherwise, he says they wouldn't be able to pay him while he's doing all these things. That's right, Judge. And so they focus heavily on the benefit argument. And your question is a great segue to that point. The focus of their argument is, well, he can work for the union, and everybody thinks that these snacks and the hand sanitizer is great, and it will benefit the border patrol. What they are talking about, and it's based on a long line of workers' compensation cases, is this theory of indirect benefit. And this very same argument of indirect benefit was made in this court, in Pilgrim v. Fortune. It was made in the Cameron case, in which the evidence was that the worker stopped to get gas, he stopped to get groceries, he stopped to get water, and he was going to go back and he was going to share this water with the workers at the drilling site. And the argument in the El Paso Court of Appeals in Cameron was that, well, of course this benefits the employer. It's a hot day in Texas. You're drilling oil wells. This is an indirect benefit to the employer to have well-hydrated employees, and therefore it's in the coarser scope of employment. That line of reasoning was squarely rejected by the Supreme Court of Texas in Cameron. When the court said, every task, literally every task or travel that supports the personal needs of an employee in some way indirectly benefits the employer. But that stretches the special mission exception too far. And the Supreme Court said we expressly reject that line of reasoning because what happens is this. Agent Donnell wasn't going to go get some special border patrol snacks or law enforcement snacks or a law enforcement tool. He's going to get personal supplies. And as the Supreme Court of Texas noted in Cameron, if we're going to make that type of a trip, even though it may indirectly benefit the employer in the coarser scope, then what we're essentially... You're not talking about this case. You're talking about another case. I'm talking about Cameron International and the reasoning that directly impacts what they're saying in this case. The reasoning of the appellate says these snacks are great for the border patrol and all these things, and therefore it's in the coarser scope. Cameron, which is the leading Supreme Court of Texas case, said no. I guess I like how you just want to reduce this to... I'm sorry, sir? I guess I like the way you're reducing this to some peanuts and some crackers. Well, it is. That's all it is. I just want to get a set of chips for everybody. The truth is, Judge... Hats and horns and a birthday party. There was no birthday party, but the truth is this. I will suggest to this court, if you're making a trip for personal supplies, whether you want to share them with fellow workers or not, that type of trip in Cameron under the Supreme Court of Texas is dead on arrival. Yeah, but the Republican women weren't giving it to him. Say again? The Republican women weren't giving these supplies to him. They were giving it to border patrol agents. They were. For use at the border patrol offices. They were. And the facilities. They were. Again, you can't reduce the case to what Judge Graves just said, getting potato chips for a few of his friends. That's not what was happening. He wasn't sharing with everybody what somebody had brought him, a cake for his birthday. He was getting supplies for the offices. He was letting in donations, and ultimately the evidence was it would be distributed to border patrol stations. And they weren't personal donations. They weren't personal donations, but they were personal consumption items, which is what was addressed by the Supreme Court in Cameron. And when Cameron said... All those border patrol folks declaring that as income that they got or some sort of donation that would be, you know... I'm sorry, could you repeat that, please? I'm being officers weren't declaring all these personal items as income that they'd received incident to their employment or gifts. I think I'm almost out of time. I'd like to address your question. There was no summary judgment evidence where the border patrol declared them one way or the other. I think it is undisputed, though, the judge, that these were personal consumption items and the same rationale that was articulated by the Supreme Court of Texas says... If I get 500 bags of potato chips, he has a personal consumption item. But I don't think anybody reasonably anticipates that one border patrol agent is going to take home 500... I don't know what this stuff is... 500 bags of potato chips or the 50 cases of hand sanitizer. I mean, come on. I see I'm out of time. Judge Graves, may I ask you a question? I don't know that I asked one, but go ahead. There's no summary judgment evidence as to the quantity of the of the supplies, just that the nature and their character, and which is why the Supreme Court said, well, if we do that, then every trip to the grocery store turns into a special mission. And they were unwilling to do that because it impermissibly expanded the narrow scope of the special mission exception. Counsel, thank you. Thank you, Ron. Thank you for having me this morning. I'd like to address a couple parts of the record that I heard in Mr. Vereen's presentation that I want to make sure the court understands accurately. So, Mr. Vereen, I thought said something along the lines of the district court did not adopt a bright line categorical rule about union activities being personal. On page 461 of the record, and I'm reading looking to workers compensation cases, the general rule is that union activities are personal. Mr. Vereen also mentioned that this was not something that Agent Duran did regularly. That is not consistent with the record. On pages 223 and 225 of the record, Agent Duran testified that on at least three other occasions, he accepted donation from women's Republican groups from Dallas, from San Angelo, and from San Antonio. And the Texas Supreme Court's decision in Nelson at page 516 stated that where it's an employee's habit or practice of which the employer is aware, then that conduct falls within the course and scope of employment. Judge Graves, you mentioned where there's testimony from 10 agents, 20 agents, 50 agents, that conduct is outside the scope of employment. Does that resolve the question? I think the Texas Supreme Court has answered that question emphatically, no. That's why it's an objective test, an objective and functional test, whether the conduct is furthering the employer's interest. Judge Wilson, I think you mentioned that perhaps counsel for the United States was oversimplifying things in terms of trying to draw a bright line between border patrol activities on the one hand and union activities on the other. Well, in his deposition, Agent Duran himself, who's been a border patrol agent for more than 20 years, could not demarcate the line between where his border patrol duties end and his union duties stop. That's at page 200 of the record. He stated, I don't know how to answer that question when it was posed. Judge Southwick, you noted that where there's 80% of an agent's time that's spent on union activities, the consequence of that is that 80%, if the government's position is adopted by this court, 80% of that time will expose that federal employee to liability. And that's contrary to the design of the Westfall Act and the Federal Tort Claims Act, which are designed to channel liability to the employer. And on that particular point, I'd like to identify 5 U.S.C. Section 731D, which states that the federal government can only pay for union activities that are, quote, reasonable, necessary, and in the public interest. And so for union activities that are compensated, for union activities for which 80% of Agent Duran's salary is drawn, those activities have to be in the interest of his employer. Mr. Vereen did not really address the supplies issue. He didn't mention the hand sanitizer. He didn't mention the mid-pandemic supplies. It wasn't mentioned in the government's brief either. And I want to make sure the record is clear on this. This is at page 344 and 345. Agent Anfinsen's testimony is that the Republican Women's Group, in this case from Kinney County, donated supplies to agents. And, of course, during the pandemic, that included, like, hand sanitizer and stuff like that. And while Cameron International was critical of work trips, travel allowances, where an employee like myself comes to court being paid for by my employer, if I go across the street to get a sandwich and I get struck by a car, that could be workers' compensation, but that would not be responding at superior reliability. And that is very different from this case, because this is not a work travel case where somebody is being paid to go off-site. Instead, it's a special mission case. So Cameron International is not apposite. The Janik decision, however, I think was helpful in how the Texas Supreme Court laid out kind of three categories of conduct. Bags of potato chips in small amounts, as Judge Graves mentioned. That is a personal item. That is outside the scope of employment. On the far end of the spectrum, you have supplies in the pandemic that includes stuff like hand sanitizer, face masks, and the like. In the middle, you have ice for workers. That presents a close question. That's the facts in Janik. And on a close question like that, perhaps tie goes to the employee and workers' compensation, and tie goes to the employer and responding at superior, but this is not that close case. Thank you, Your Honor. Thank you. Thanks to both counsel for your presentations today.